# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAID HASSAN ABD LATIF SAFARINI, *Plaintiff*, v. JOHN ASHCROFT, Former Attorney General, *et al.*, *Defendants.* | Civil Action No. 17-430 (RDM) |

## MEMORANDUM OPINION

Appearing *pro se*, Plaintiff Zaid Hassan Abd Al-Latif Masud Safarini ("Safarini") filed this suit in March 2017 against various former U.S. and foreign officials, the Kingdoms of Thailand and Jordan, the Thai National Police, and Thai Airlines International. He alleges that he was unlawfully kidnapped in Bangkok, Thailand in 2001 by agents of the Federal Bureau of Investigation ("FBI"), acting with the assistance of the remaining defendants, and rendered to the United States for trial. Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(iii), the Court previously dismissed Safarini's claims against the Kingdoms of Thailand and Jordan, the Thai National Police, Dkt. 12, "Thai Airlines International," Ahmed Al-Hajayh, and various "unknown immigration officials of the Kingdom of Thailand, Dkt. 14. As a result, the sole remaining defendants are former Attorney General John Ashcroft, former Director of the FBI Robert Mueller, and three current or former FBI agents. Having reviewed the complaint and the relevant law, the Court now *sua sponte* dismisses Safarini's claims against those officials. And, having now addressed all of Safarini's claims, the Court will dismiss the action.

# I. BACKGROUND

The events giving rise to Plaintiff's claim begin on September 5, 1986, when Safarini, along with four other armed men, hijacked a Pan Am flight on the tarmac in Karachi, Pakistan. *See* United States' Omnibus Opposition at 1–2, *United States v. Zaid Hassan ABD Al-Latiff Masud Al Safarini*, No. 91-cr-504-03 (D.D.C. Sept. 12, 2017). Twenty people—including two American citizens—were killed, and over one hundred people were injured. *Id.* at 2. Safarini was tried and convicted in Pakistan in 1987. *Id.* After fifteen years in prison in Pakistan, Safarini was released on September 27, 2001. *Id.*

Safarini alleges in his complaint that, upon his release, a Jordanian official named Ahmed Al-Hajayh met Safarini and informed him that Al-Hajayh had made arrangements to transport Safarini home to Jordan. Dkt. 1 at 4 (Compl. ¶ 15). The arranged flight included a scheduled stopover in Bangkok, Thailand, where Safarini says he deplaned to change flights. *Id.* While waiting for the next flight that would take him to Jordan, three FBI special agents, whom Safarini identifies as "Special Agent Brad," "Special Agent Nada Ali," and an "Unknown Special Agent," allegedly handcuffed Safarini and put him on a flight bound for the United States. *Id.*

After his arrest, Safarini was tried in the United States District Court for the District of Columbia for multiple crimes, including murder, attempted murder, attempted air-piracy, hostage-taking, and conspiracy to commit crimes against the United States. *See* United States' Omnibus Opposition at 2–3, *United States v. Zaid Hassan ABD Al-Latiff Masud Al Safarini*, No. 91-cr-504-03 (D.D.C. Sept. 12, 2017). Safarini pleaded guilty to ninety-five charges and was sentenced to three consecutive life sentences plus twenty-five years. *Id.* at 3–4.

After sentencing, Safarini was transported to the supermax penitentiary in Florence, Colorado, where he was held for seven years. Dkt. 1 at 5 (Compl. ¶ 15). Safarini alleges that

while held in the supermax facility, he "had very little contact with others, largely remaining in solitary confinement." *Id.* at 5. As a result, Safarini contends that he suffered, and continues to suffer, from "numerous health and psychological problems, including cardiac disorders, stress and anxiety disorders." *Id.* He alleges that his placement in the supermax facility was "totally arbitrary" and "implemented solely for punishment over and above that imposed by the court." *Id.*

On March 10, 2017, Safarini filed this action against various U.S. and foreign officials and others he alleges were involved in his purported kidnapping. In two previous orders, the Court dismissed the foreign defendants: the Government of the Kingdom of Thailand, the Hashemite Kingdom of Jordan, Thailand National Police Agency, Dkt 12; "Thai Airline International," Ahmed Al-Hajayh, and "Unknown Immigration Officials" for the Government of the Kingdom of Thailand, Dkt. 14. The remaining defendants include the FBI special agents that allegedly executed Plaintiff's arrest and transport to the United States—Special Agent "Brad," Special Agent Nada Ali, and "One Unknown Special Agent"—as well as former Attorney General John Ashcroft and former Director of the FBI Robert Mueller (collectively the "Federal Defendants"). Dkt. 1 (Compl. ¶¶ 3–13). The complaint specifies that "the individuals named as defendants are being sued in their individual capacities."[1] *Id.* (Compl. ¶ 14).

---

[1] Because Safarini is proceeding *pro se*, "[t]he officers of the court" are responsible for serving "all process." 28 U.S.C. § 1915(d). Although the U.S. Marshal's Service attempted to serve the Federal Defendants, the United States has filed a Statement of Interest, 28 U.S.C. § 517, noting that former Attorney General Ashcroft, former FBI Director Mueller, and the current or former FBI agents have not been properly served, and arguing that the case should therefore be dismissed for failure of timely service. Dkt. 9. That would seem a harsh and unjust consequence, given that Safarini is not responsible for effecting service and that the Department of Justice has (at least to the Court's knowledge) done nothing to facilitate service of former government officials. In the ordinary course, the Court would ask the plaintiff for the mailing addresses necessary to effect service, but it seems implausible—and, in any event, unwise—to suggest that incarcerated felons should know where former law enforcement officials reside. It

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act, the Court is required to dismiss a "case at any time if" it "determines that . . . the action . . . is frivolous[,] malicious[,] . . . fails to state a claim upon which relief can be granted[,] or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A complaint that is "filed *pro se* is 'to be liberally construed,'" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But, where "it is patently obvious" that the plaintiff cannot "prevail[] on the facts alleged in his complaint," *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990), the Court may *sua sponte* dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), *see Baldwin v. Small Business Admin.*, 2017 WL 2455026 *3 (D.D.C. June 6, 2017), and, indeed, must do so under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2).

## III. ANALYSIS

Liberally construed, the complaint purports to allege claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); the Alien Tort Statute, 28 U.S.C. § 1350; the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*; the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*; the Ku Klux Klan Act, 42 U.S.C. § 1985; the Third and Fourth Geneva Conventions, 6 U.S.T. 3316, 6 U.S.T. 3516; various criminal statutes, 18 U.S.C. §§ 1201, 1651; "[i]nternational laws;" "the extradition treaty with Thailand;" the Geneva

---

would benefit the courts and the sound (and safe) administration of justice for the Department of Justice to consider how the courts should go about effecting service on current and former law enforcement officials without revealing their personal addresses.

Convention; and common law fraud. Dkt. 1 at 2, 5–6 (Compl. ¶¶ 1, 16). The Court will consider each of these allegations in turn.

**A.** *Bivens*

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized an implied private cause of action for damages against federal officials for alleged violations of the Fourth Amendment. Subsequent decisions, moreover, have extended that implied cause of action to violations of the Due Process Clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979), and to violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980). Here, the complaint invokes *Bivens* and all three of these constitutional provisions. Those claims fail for two reasons.

First, Safarini's Fourth and Fifth Amendment claims fail because they seek recovery for allegedly tortious conduct committed overseas by U.S. officials engaged in a terrorism investigation. In particular, he alleges that the Federal Defendants unlawfully seized him at the airport in Bangkok, Thailand, and then unlawfully transported him to the United States. Dkt. 1 at 4 (Compl. ¶ 15). Safarini further alleges that he is a "foreign national." *Id.* at 3 (Compl. ¶ 3). And, finally, although not recounted in the complaint, the Court can take judicial notice of the fact that Safarini was taken into U.S. custody on charges that he led a team that hijacked a Pan Am flight in Karachi, Pakistan; shot one U.S. citizen and threw his body on the tarmac; and, eventually, opened fire on the passengers, killing nineteen of them, including another U.S. citizen, and injuring over a hundred others. *See United States v. Safarini*, 257 F. Supp. 2d 191, 193 (D.D.C. 2003). As a result, the Court must decide whether *Bivens* reaches claims brought under the Fourth and Fifth Amendments to the U.S. Constitution, by non-U.S.-persons, for

actions taken by U.S. law enforcement officials outside the United States, in response to the hijacking of an aircraft outside the United States. The answer to that question is "no."

The D.C. Circuit decided a similar question in *Meshal v. Higgenbotham*, 804 F.3d 417 (D.C. Cir. 2015). There, the Court of Appeals held that *Bivens* does not extend to cases involving (1) national security or terrorism investigations, (2) where the relevant "conduct that occurred outside the borders of the United States." *Id.* at 425–26. The Court reached that conclusion, moreover, even though the plaintiff in that action—unlike the present case—was a U.S. citizen, and even though the investigation in that case had both national security and criminal law enforcement components. *Id*. at 418, 423. Although the terrorist attack at issue in this case occurred fifteen years before Safarini's apprehension by U.S. officials, the same considerations that were present in *Meshal* apply here as well. As the Court of Appeals wrote, "[m]atters touching on national security and foreign policy fall within an area of executive action where courts hesitate to intrude absent congressional authorization," and, courts must proceed with caution when their actions "could have diplomatic consequences." *Id.* at 426–27. Here, Safarini's claim posits that the United States connived with foreign officials to take him into custody on foreign soil; thus, his claim, even if accepted as true for purposes of evaluating its legal merit, necessarily implicates sensitive issues of national security and foreign policy.

But, even putting this aside, extending *Bivens* to Safarini's claims would involve a leap well beyond that which the Court of Appeals deemed too far in *Meshal*. Safarini is not a U.S. citizen, and, more importantly, he was not a U.S. citizen at the time he was allegedly apprehended by U.S. law enforcement officials in Thailand. The Court is unaware of any case in which any court has extended *Bivens* to a claim by a non-U.S.-citizen, alleging that he was deprived of his or her rights under the Fourth and Fifth Amendments while outside the United

States and outside any area over which the United States has exercised authority or control. The case law that does exist, moreover, counsels against recognition of such an extraordinary extension of U.S. tort law. *See*, *e.g.*, *United States v. Verdugo-Urquiez*, 494 U.S. 259, 276–75 (1990) (holding that the Fourth Amendment does not protect nonresident aliens against unreasonable searches or seizures conducted outside sovereign U.S. territory); *Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009) (holding that the Due Process Clause "does not apply to aliens without property or presence in the sovereign territory of the United States"), *vacated and remanded*, 559 U.S. 131 (2010), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010), *cert. denied*, 563 U.S. 954 (2011).

Safarini's Eighth Amendment *Bivens* claim fares no better. Although Safarini premises this claim on conduct that allegedly occurred in the United States—the conditions of his confinement at the supermax facility—he has failed to allege "sufficient factual matter" that, even if accepted as true, would state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). He alleges that, while at the supermax facility, he "had very little contract with others, largely remaining in solitary confinement," and that, as result, he suffered "numerous health and psychological problems." Dkt. 1 at 5 (Compl. ¶ 15). This confinement, he adds, "was totally arbitrary . . . and was implemented solely for punishment over and above that imposed by the court." *Id.* But, nowhere does Safarini allege or explain how former Attorney General Ashcroft, former FBI Director Mueller, and the three FBI agents involved in his apprehension are responsible for the conditions at the supermax facility. Absent some factual allegation that the Federal Defendants "participated in any decision or approved any policy that related to" the conditions of his confinement or otherwise "specifying [their] involvement," Safarini's claim cannot pass muster under Federal Rule of Civil Procedure

7

12(b)(6). *Cameron v. Thornburg*, 983 F.2d 253, 258 (D.C. Cir. 1993); *see also Staples v. United States*, 948 F. Supp. 2d 1, 3 (D.D.C. 2013) ("A federal official may be held personally liable under *Bivens* only for unconstitutional conduct in which he was personally and directly involved.").

Accordingly, Safarini's *Bivens* claims must be dismissed for failure to state a claim upon which relief can be granted.

**B.      Federal Tort Claims Act**

Plaintiff also brings suit under the Federal Tort Claims Act ("FTCA"), which authorizes suit against the United States for certain injuries caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). That claim fails for multiple reasons, only three of which require discussion here.

First, "[t]he United States of America is the only proper defendant in a suit under the FTCA." *Chandler v. FBI*, 227 F. Supp. 3d at 112, 116 n.3 (D.D.C. 2017). Safarini, however, has not sued the United States, and he has made clear that his claims against the Federal Defendants are brought against them in their "individual capacities." Dkt. 1 at 4 (Compl. ¶ 14). Nor has the United States filed a certification under the Westfall Act, which would substitute the United States for the individual defendants. *Sai v. Dep't Homeland Sec.*, 149 F. Supp. 3d 99, 122–23 (D.D.C. 2015).

Second, even had Safarini named the United States, his FTCA claim would fail. The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6

(1962). But, where a statutory exception applies, the waiver of sovereign immunity remains intact, and the court is without jurisdiction to consider the claim. That is the case here. In particular, the FTCA contains an express exception for "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). In circumstances much like those present here, the Supreme Court held in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), that the foreign country exception barred suit under the FTCA against U.S. law enforcement officials for allegedly arranging for "Mexican nationals to seize [another Mexican national] and [to] bring him to the United States for trial." *Id*. at 698. As the Supreme Court explained, those actions were "naturally understood as the kernel of a 'claim arising in a foreign country,'" and were thus "barred from suit under the exception to the waiver of immunity." *Id.* at 700 (quoting 28 U.S.C. § 2680(k)). The Court was unpersuaded, moreover, that actions of U.S. officials in the United States in orchestrating the seizure took the case outside the foreign country exception. *Id.* at 703–12. Because Safarini's claim that he was unlawfully seized in Thailand is, in relevant respects, on all fours with *Sosa*, the Court would lack jurisdiction over such a claim, even had Safarini named the United States.

Third, to the extent Safarini seeks to recover under the FTCA on the theory that the conditions of his incarceration at the supermax facility violated his Eighth Amendment rights, the FTCA does not provide a remedy for constitutional torts. In the words of the Supreme Court, "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). Thus, the Court would also lack jurisdiction over an FTCA claim against the United States premised on the Eighth Amendment.

Safarini's FTCA claims against the Federal Defendants, accordingly, must also be dismissed for lack of jurisdiction and failure to state a claim.[2]

## C. Alien Tort Statute and the Geneva Conventions

The Alien Tort Statute ("ATS") authorizes suit "by an alien for a tort . . . committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. As with Safarini's FTCA claims, the Supreme Court addressed claims much like his ATS and international law claims in *Sosa*. 542 U.S. at 712–38. Like Safarini, the plaintiff in *Sosa* alleged that he had been forcibly abducted overseas so that he could be brought to the United States to face criminal charges. *Id*. at 697. In considering whether the ATS provided a vehicle for such a suit, the Supreme Court held that the ATS is merely a jurisdictional statute, which does not itself create a cause of action. *Id.* at 724. But it also held that Congress granted the federal courts jurisdiction over alien torts "on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time." *Id.* Thus, to bring a common law claim under the ATS, a plaintiff must identify "a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms [the Court has previously] recognized." *Id.* at 725. Applying these principles, the *Sosa* Court concluded:

> Whatever may be said for the broad principle [the plaintiff] advances, in the present, imperfect world, it expresses an aspiration that exceeds any binding customary rule having the specificity we require. Creating a private cause of action to further that aspiration would go beyond any residual common law discretion we think it appropriate to exercise. It is enough to hold that a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy.

---

[2] As discussed above, had Safarini brought suit against the United States, those same claims would fail for want of jurisdiction.

*Id.* at 738.

The same, of course, follows here—with, if anything, even greater certainty. Indeed, while the plaintiff in *Sosa* was abducted in Mexico after the Mexican government declined to "help in getting [him] into the United States," *id.* at 698, Safarini alleges that Thai government officials "allow[ed]" the FBI to take him into custody, Dkt. 1 at 3 (Compl. ¶ 6). In any event, even if Safarini's seizure and brief detention in Thailand—before he was brought to the United States and promptly arraigned—was in any way "illegal," it did not violate any "norm of customary international law so well defined as to support" a claim under the ATS. *Sosa*, 542 U.S. at 738.

Thus, Safarini's ATS and related international law claims must also be dismissed for failure to state a claim upon which relief may be granted.

**D.    Religious Freedom Restoration Act**

The Religious Freedom Restoration Act ("RFRA") prohibits the government from "substantially burden[ing] a person's exercise of religion" unless it "demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b). Safarini fails to allege that the government took any action that burdened his free exercise of religion, and, accordingly, this claim also fails as a matter of law. *See Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### E. Ku Klux Klan Act

The Ku Klux Klan Act is a Reconstruction-Era statute that provides a damages action "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws." 42 U.S.C. § 1985(3). Section 1985 provides a remedy only when the plaintiff can show, among other things, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (alterations, quotation marks, and citations omitted). Here, Safarini has not alleged that the Federal Defendants took any action motivated by that kind of discriminatory animus. Accordingly, this claim must also be dismissed for failure to state a claim.

### F. Criminal Statutes and Fraud Claim

Safarini's last two sets of claims also fail as a matter of law. He attempts to invoke two federal criminal statutes (kidnapping, 18 U.S.C. § 1201, and piracy, 18 U.S.C. § 1651), but—even if applicable—neither of those statutes includes a private right of action, and federal criminal statutes cannot be enforced through a *Bivens* action, *see Kittner v. Gates*, 783 F. Supp. 2d 170, 175 n.4 (D.C. Cir. 2011). Finally, Safarini alleges the Federal Defendants violated "representations made to the representatives of the government of Pakistan," and thus committed "fraud." Dkt. 1 at 6 (Compl. ¶ 16). To state a claim for common law fraud, a plaintiff must allege "(1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages." *Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F. Supp. 2d 131, 145 (D.D.C. 2010).

Here, Safarini does not allege that the Federal Defendants intended to deceive *him* or that *he* acted in reliance on any representation they made.  For both of these reasons—and others as well—he has failed to state a claim for common law fraud.

Accordingly, Safarini's criminal law and common law fraud claims must also be dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated above, the remaining claims in Safarini's complaint will be dismissed on the Court's own motion pursuant to 28 U.S.C. § 1915(e)(2).

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 3, 2018